UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Donna Lucia,

      Plaintiff,

v.                           Case No.  12-15135

Ford Motor Company,          Sean F. Cox
                                 United States District Court Judge

      Defendant.
_____/

**OPINION & ORDER**
**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

      Plaintiff filed this action against her current employer, her union, and several individuals,

asserting employment discrimination claims.  Her employer, Defendant Ford Motor Company

("Defendant"), is now the only remaining Defendant. Following the close of discovery,

Defendant filed a Motion for Summary Judgment.  The parties have briefed the issues and the

Court heard oral argument on January 23, 2014.  In addition, the Court ordered supplemental

briefing following that hearing.  For the reasons set forth below, the Court shall GRANT

Defendant's Motion for Summary Judgment and dismiss this action with prejudice.

**BACKGROUND**

**A.**     **Procedural History**

      Plaintiff Donna Lucia ("Plaintiff") filed this action in Wayne County Circuit Court on or

about October 1, 2012.

      Plaintiff's Complaint asserted claims against Defendant Ford, Local 600, and several

individual defendants.  Her Complaint includes the following causes of action:  "Allegation of

Sexual Discrimination, Sexual Harassment & Retaliation" (Count I), in violation of the Elliott-Larsen Civil Rights Act; "Violation of MCL 37.1201 et seq." (Count II), asserting a violation of Michigan's Persons with Disabilities Rights Act; "Intentional Infliction of Emotional Distress" (Count III); and "Civil Conspiracy" (Count IV).

The action was removed to federal court on November 20, 2012, based upon federal question jurisdiction. The Notice of Removal asserts that the action is preempted by § 301 of the Labor Management Relations Act, which preempts claims predicated on rights created by a collective bargaining agreement. This action was originally assigned to the Honorable Gerald Rosen.

On February 19, 2013, Judge Rosen disqualified himself and this case was reassigned to the Honorable John O'Meara.

On April 3, 2013, Plaintiff dismissed her claims against Local 600. (Docket Entry No. 23). She has also dismissed her claims against all the individual Defendants, leaving Ford as the sole Defendant.

Plaintiff changed counsel during the course of this case and Plaintiff's current counsel did not draft the complaint or defend Plaintiff's deposition.

On September 12, 2013, Ford filed a Motion for Summary Judgment. (Docket Entry No. 43). After that motion was fully briefed, but before it was ruled upon, on November 6, 2013, Judge O'Meara disqualified himself and the action was reassigned to this Court.

This Court held a Status Conference on November 25, 2013 and then issued another Scheduling Order setting the final pretrial conference for March 3, 2014. The Court also set the

2

pending Motion for Summary Judgment for hearing on January 23, 2014.

Because the pending motion for summary judgment was filed and fully briefed while this case was assigned to Judge O'Meara, the parties did not follow this Court's practice guidelines for summary judgment motions.

At the January 23, 2014 hearing in this matter, Plaintiff's current counsel acknowledged that the Complaint contained allegations that were actually untrue, such as the allegation that Ford had terminated Plaintiff. (*See* 1/23/14 Tr.). Plaintiff's Counsel also stated that Plaintiff was deposed before he came into the case and that Plaintiff gave vague, ambiguous, and unfocused testimony during her deposition. (*Id*.). Plaintiff's Counsel sought to oppose Defendant's Motion for Summary Judgment by filing a lengthy Declaration from Plaintiff. (*Id*.; *see* Ex. 2 to Pl.'s Br.).

This Court asked Plaintiff's Counsel questions at the January 23, 2014 hearing to determine what claims Plaintiff is actually asserting in Count I of her Complaint. Plaintiff's Counsel stated that, in Count I, Plaintiff asserts: 1) a hostile work environment claim under the ELCRA, based on sexual harassment; and 2) a retaliation claim under the ELCRA for having complained about sexual harassment. He stated that Count I does not assert a gender-discrimination claim.

Because the Court concluded that neither brief sufficiently addressed the retaliation claim being asserted in Count I, the Court ordered supplemental briefs. Those briefs have since been filed.

**B.    Factual Background**

The following facts can be gleaned from the evidence submitted by the parties, taken in

the light most favorable to Plaintiff, the non-moving party.

Plaintiff began working for Defendant in November of 2000. (Pl.'s Dep. at 36). Plaintiff is an hourly assembler, represented by U.A.W. Local 600. Plaintiff has worked for Defendant in various crews or job positions, at several different locations. (Pl.'s Dep. at 36-41). Plaintiff has been working at Defendant's Dearborn Truck Plant since 2009. (Pl.'s Dep. at 41).

**Interactions With Production Shift Manager Jack DeBono In 2009**

Plaintiff alleges that in early 2009 Production Shift Manager Jack DeBono ("DeBono") complimented Plaintiff by telling her that she looked great, flirted with Plaintiff, and asked her to go out on a date with him. (1/23/14 Hrg. Tr.; Pl.'s Decl.) Plaintiff declined to date him initially, but in March or April of 2009 she went out on a total of three dates with DeBono. (*Id.*; *see also* Pl.'s Dep. at 17).

Plaintiff's Declaration states that during one of her dates with DeBono, he said, "I don't get mad, I get even." (Pl.'s Decl.) During her deposition, Plaintiff testified as to the context in which DeBono said that:

> one time John DeBono made a remark to me that he had gotten into a fight with a health and safety rep. And he goes, he's my buddy. And I said, well, how do you fight with your buddy? He goes, I don't get mad, I get even.

(Pl.'s Dep. at 193).

After Plaintiff stopped dating DeBono, he stayed away from Plaintiff's work area. (Pl.'s Decl.).

**Interactions With Union Agent Ray Swidan In 2010**

Plaintiff alleges that in January of 2010 a union agent named Ray Swidan complimented Plaintiff by saying she was a beautiful woman. Outside of work, Plaintiff attended a party at

4

Swidan's home.  Plaintiff asserts that Swidan appeared to be angry when Plaintiff left the party early.  (1/23/14 Hrg. Tr.; Pl.'s Decl.).

Plaintiff also states that, in September of 2010, Swidan attempted to be intimate with Plaintiff by leaning in to her to have a kiss from her.  (*Id.*).  Plaintiff complained to Labor Relations after Swidan tried to kiss her in September of 2010.

### Alleged Comment By Shelby Willis In August Of 2010

In August of 2010, Plaintiff sustained a workplace injury to her forehead.  From the hospital, Plaintiff sent a photo of her injured forehead to her manager at that time, Shelby Willis ("Willis").  Willis allegedly made a statement to another employee at the plant that he "should have hit that" before Plaintiff messed up her pretty face.  (1/23/14 Hrg. Tr.).

After Plaintiff learned of the comment made by Willis, she complained to Defendant about it.

### Tim Lampi's Alleged Harassment In January Of 2012

In January of 2012, Plaintiff began reporting to a new supervisor, Tim Lampi ("Lampi"). Plaintiff's Declaration states that Lampi sexually harassed her "by making both subtle and overt advances and suggestive remarks."  (Pl.'s Decl. at ¶ 41).  The only example or supporting detail regarding that alleged conduct that Plaintiff provides is that Lampi once said that he was "known to drunk text."  (*Id.*).  Plaintiff's Declaration states that Plaintiff "understood this reference as meaning that Lampi was preparing me to receive from him sexually suggestive or romantic text messages while he was drunk."  (*Id.*).

### Plaintiff's Complaints To Defendant's Complaint "Hot-Line"

Plaintiff placed telephone calls to Defendant's complaint "hot-line" on October 14, 2010,

in April of 2012, and again in May of 2012. (Pl.'s 3/3/14 Br. at 1).

In the October of 2010 call, Plaintiff complained that after she stopped dating DeBono she has been placed on "hard jobs" and her ex-husband Jack Spitz[1] told that her DeBono was behind it. At that time, Plaintiff also complained about the alleged comment that Willis made after she injured her face. She also complained that someone adjusted the torque on a gun making it difficult to use and her "work has been sabotaged in obvious ways" that were not specified and that co-worker Donnie Clark witnessed one team lead tell another that "the reason they were messing with Donna was because she filed a complaint against Shelby [Willis]." (Ex. 7 to Pl.'s Br.).

In Plaintiff's April 2012 call, she complained that the auditor job had been eliminated and that she was told she had to go back on the line, and that Plaintiff advised Russ Chambers that the job was out of her restrictions and he responded, "If you do not like it, go out on no work available." Plaintiff also stated that Kevin Weid ("Weid") had told her that Lampi had asked Weid, "You hitting that?" in reference to Plaintiff. (Pl.'s Decl. at ¶ 45).

In Plaintiff's May 2012 call, Plaintiff stated that she was being harassed by Lampi in unspecified ways, that Lampi has made advances toward her and she has ignored him and been mean to him to get him stop, and that Lampi asked an hourly employee "Are you hitting that?" in reference to her. (Ex. 10 to Pl.'s Br.). In that same call, Plaintiff complained that being placed on the door line was outside of her restrictions, but also noted that she complained to Dr. Ubom about it and Dr. Ubom "reviewed my job and said that I can do it." (*Id.*).

---

[1]Spitz denies making any such statements. (*See* Spitz Decl., attached to Def.'s Reply Br.).

**Plaintiff's Suspension In August Of 2012**

It is undisputed that Plaintiff reported to Defendant that Weid had told her that Lampi asked him, "you hitting that?" in reference to Plaintiff.  (Pl.'s Decl. at ¶ 45; Ex. 10 to Pl.'s Br.).

Defendant's Labor Relations/Human Resources Representative Mary Meier ("Meier") was assigned to investigate Plaintiff's hot-line call wherein she complained about Lampi's alleged statement to Weid and her allegation that Lampi had harassed her.  (Meier Dep. at 22 & 37-40).  Labor Relations Manager Steve Wilcox ("Wilcox") assigned Meier to that task.  (*Id.* at 22-23).

Meier took a statement from Plaintiff and also took a statement from Weid.  (*Id.* at 28-29).  She created a summary of her investigation.  (*Id.*).

Plaintiff told Meier that Weid had told her that Lampi had made the statement to him, "Are you hitting that?" which Meier understands to mean, are you sleeping with her.  (*Id.* at 32-33).  Weid, however, denied that he heard any such statement from Lampi or that he told Plaintiff about such a statement.  (Weid Dep. at 16-18; Meier Dep. at 42-43; Ex. 3 to Meier Dep.).  Weid further told Meier that Plaintiff had nevertheless asked him to say that Lampi had made the statement and that he told Plaintiff no he would not do so because it was not true.  (Meier Dep. at 43; Ex. 3 to Meier Dep.).

Following her investigation, Meier completed a written report.  (Ex. 3 to Meier Dep.).  That report stated that while Plaintiff alleged that Lampi had harassed her, "[w]hen prompted by Labor Relations several times to provide specific situations where she felt harassed, she could not identify any."  (*Id.*).  Her report also stated that "Weid does not confirm that Lampi asked him if he was "hitting that" in reference to Lucia.  Furthermore, Weid states that Lucia asked him if he

would support her if she made a claim to Labor Relations stating such.  Weid told Lucia that he would not do that because it was not true.  She responded, 'I don't care, I can still bring it up.' Weid could not identify witnesses or anyone else whom Lucia might have stated this to."  (*Id.*).

In her report, Meier recommended that Plaintiff's employment be terminated for providing false information:

> Recommendation:
>
> When an employee provides false information, the historical view in Umpire Decisions has been based on if the action was deliberate and if there was something to be gained (or to prevent loss) out of the claim. Lucia seems emotionally distraught over the fact that she has been placed back to her home department (Trim). She believes MPS Tim Lampi is at fault for eliminating her job and therefore has filed a retaliatory false sexual harassment claim.
>
> Due to the seriousness of the claims made by Lucia against another employee, it is my recommendation the employee is discharged for providing a false harassment claim to Labor Relations.

(Ex. 4 to Meier Dep.).  Meier provided her summary and recommendation to her supervisor. (Meier Dep. at 45-47).

Meier's supervisor did not follow her recommendation to terminate Plaintiff and, instead, Plaintiff was suspended.  Plaintiff served a three-week suspension following a disciplinary hearing.   Plaintiff filed a grievance regarding her suspension and that grievance is still pending.

**Plaintiff Is Still Employed By Defendant**

After serving her suspension, Plaintiff was returned to work.  Although Plaintiff's Complaint states that she was terminated by Defendant, Plaintiff's Counsel acknowledged at the hearing that Defendant has never terminated Plaintiff and that Plaintiff is still employed by Defendant.

**Standard of Decision**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). This Court must draw all justifiable inferences from the evidence in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

## ANALYSIS

### I.      Are Any Of Plaintiff's Claims Preempted By § 301?

Defendants removed this case to federal court based upon federal question jurisdiction. Defendants asserted that Plaintiff's claims are preempted by preempted by § 301 of the Labor Management Relations Act, which preempts claims predicated on rights created by a collective bargaining agreement.

After the action was removed, Plaintiff did not file a motion to remand the action to state court or challenge removal. In responding to Ford's Motion for Summary Judgment, however, Plaintiff asserts that not all of her claims are preempted by § 301. (*See, e.g.*, Pl.'s Br., asserting that her claims of sexual harassment and retaliation do not require interpretation of the collective bargaining agreement and are not preempted).

Lack of subject matter jurisdiction can be raised at any point in the proceedings, even on appeal. Before proceeding to evaluate the merits of the pending motion, this Court shall determine if it has subject matter jurisdiction over any of Plaintiff's claims in this action by

9

virtue of preemption.  If any one of Plaintiff's claims is preempted, then the Court has subject matter jurisdiction over that claim and it may exercise supplemental jurisdiction over any remaining state-law claims even if they are not preempted.

As explained below, the Court concludes that, at a minimum, Plaintiff's claim for intentional infliction of emotional distress damages is preempted. Thus, this Court has subject matter jurisdiction.

Section 301 of the Labor Management Relations Act preempts any state-law claim arising from a breach of a collective bargaining agreement.  *Mattis v. Massman*, 355 F.3d 902, 905 (6th Cir. 2004).  "Preemption under § 301 applies not only to state-law contract claims, but has been expanded to include state-law tort claims as well."  *Id*.  "Not every tort claim, however, relating to employment will be subject to preemption under § 301."  *Id*.  "To survive preemption under § 301, the tort claims must be 'independent' of the CBA."  *Id.*

The Sixth Circuit has explained that "[t]o determine whether a state-law claim is sufficiently 'independent' to survive § 301 preemption," involves a "two-step inquiry:"

> First, courts must determine whether resolving the state-law claim would require interpretation of the terms of the collective bargaining agreement.  If so, the claim is preempted.  Second, courts must ascertain whether the rights claimed by the plaintiff were created by the collective bargaining agreement, or instead by state law.  *Id*. at 216. If the rights were created by the collective bargaining agreement, the claim is preempted. In short, if a state-law claim fails either of these two requirements, it is preempted by § 301.

*Mattis*, 355 F.3d at 906.

"In order to make the first determination, the court is not bound by the 'well-pleaded complaint' rule, but rather, looks to the essence of the plaintiff's claim, in order to determine whether the plaintiff is attempting to disguise what is essentially a contract claims as a tort."

10

*DeCoe v. General Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994).

Count III of Plaintiff's Complaint asserts a claim for intentional infliction of emotional distress. Plaintiff alleges that "Defendants' conduct in terminating a qualified, experienced, and high performing worker with 12 years of experience was 'extreme and outrageous.'" (Compl. at ¶ 183).

The allegations in Plaintiff's Complaint involve workplace actions taken under the ostensible authority of the CBA (e.g., work reassignments, discipline). As in *Mattis* and *DeCoe*, determining whether Plaintiff's alleged harassment constituted "outrageous conduct" would force this Court to look to the CBA. The claim is preempted because "reference must be made to the CBA in order to determine whether the defendants acted outrageously, or whether they merely pursued their legal rights 'in a permissible way.'" *DeCoe*, 32 F.3d at 220.

## II. This Court Has Subject Matter Jurisdiction And Shall Determine Whether Ford Is Entitled To Summary Judgment.

Because Plaintiff's intentional infliction of emotional distress claim is preempted by § 301, this Court has subject matter jurisdiction over that claim and may exercise supplemental jurisdiction over the remaining claims even if they are not preempted.

Ford's Motion for Summary Judgment seeks summary judgment as to all four Counts of Plaintiff's Complaint.

### A. "Allegation of Sexual Discrimination, Sexual Harassment & Retaliation" (Count I)

Count I of Plaintiff's Complaint is titled "Allegation of Sexual Discrimination, Sexual Harassment & Retaliation" (Compl. at 17). In Count I, Plaintiff asserts a claim under Michigan's Elliott-Larsen Civil Rights Act ("ELCRA") only. Plaintiff alleges, in pertinent part, that:

171.   Plaintiff's sex was at least one factor that made a difference in Defendants'
decisions to harass, discriminate and retaliate against Plaintiff when she
was treated in a disparate fashion from similarly situated co-workers.

172.   Defendant, through its agents, representatives, and employees, was
predisposed to discriminate on the basis of sex and acted in accordance
with that predisposition.

173.   Defendant, through its agents, representatives, and employees, treated
Plaintiff differently from similarly situated female and male employees in
the terms and conditions of employment, based on unlawful consideration
of sex.

(Compl. at 18).

At the hearing, Plaintiff's Counsel stated that, in Count I, Plaintiff asserts: 1) a hostile

work environment claim under the ELCRA, based on sexual harassment; and 2) a retaliation

claim under the ELCRA for having complained about sexual harassment.

**1.   Does Plaintiff's Hostile Work Environment Claim Based On Sexual
Harassment Fail As A Matter Of Law?**

Michigan's "ELCRA prohibits employers from discriminating against employees based

on sex, which includes sexual harassment." *Kalitch v. AT&T Mobility, Inc*., 679 F.3d 464, 469

(6th Cir. 20012) (citing *Chambers v. Trettco, Inc*., 463 Mich. 297 (2000) and Mich. Comp. Laws

§ 37.2102)).  "Michigan law defines 'sexual harassment' as 'unwelcome sexual advances,

requests for sexual favors, and other verbal or physical conduct or communication of a sexual

nature' under circumstances where submission to the conduct or communication is made a 'quid

pro quo' of gaining or keeping employment or where the conduct or communication 'has the

purpose or effect of substantially interfering with an individual's employment . . .'" *Kalitch*, 679

F.3d at 469-70 (quoting Mich. Comp. Laws § 37.2103(i)).

"Sexual harassment that substantially interferes with an individual's employment is

12

referred to as 'hostile work environment' harassment." *Katlitch,* 679 F.3d at 470 (citing *Radke v. Everett*, 442 Mich. 368 (1993)).

"In order to establish a claim of hostile environment harassment, an employee must prove the following elements by a preponderance of the evidence: (1) the employee belonged to a protected group; (2) the employee was subjected to communication or conduct on the basis of sex; (3) the employee was subjected to unwelcome sexual conduct or communication; (4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offense work environment; and (5) respondeat superior." *Chambers v. Trettco, Inc.*, 463 Mich. at 311.

Here, Defendant contends that, among other things, Plaintiff cannot establish the third element, that she "was subjected to unwelcome sexual conduct or communications," or the fourth element, that the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with her employment or created a hostile work environment.

The third "element is derived from the language in § 37.2103(i) of ELCRA, which states that '[s]exual harassment means unwelcome sexual advances, request for sexual favors, and other verbal or physical conduct or communication of a sexual nature . . .' *Id.*" *Kalich*, 679 F.3d at 472. As the Sixth Circuit has explained:

> The Michigan Supreme Court has held that "actionable sexual harassment requires conduct or communication that inherently pertains to sex." *Corley v. Detroit Bd. of Educ.*, 470 Mich. 274, 681 N.W.2d 342, 345 (2004) (defining "sexual nature"); *see also Haynie*, 664 N.W.2d at 135-36; *Barrett*, 628 N.W.2d at 74-75. Discriminatory conduct that is gender-based but not sexual in nature does not constitute sexual harassment. *Haynie*, 664 N.W.2d at 135.

*Kalich,* 679 F.3d at 471-72.

13

The Fourth element "requires the plaintiff to show that the unwelcome sexual conduct or communications were intended to or did in fact substantially interfere with the plaintiff's employment or created an intimidating, hostile, or offensive work environment." *Kalich,* 679 F.3d at 473 (citing *Haynie, supra*). "The essence of a hostile work environment action is that one or more supervisors or coworkers create an atmosphere so infused with hostility" that they alter the conditions of the plaintiff's employment. *Id*. "The existence of a hostile work environment 'shall be determined by whether a reasonable person, in the totality of the circumstances, would have perceived the conduct at issue as substantially interfering with the plaintiff's employment or having the purpose or effect of creating an intimidating, hostile, or offensive work environment." *Id.* (citing *Radtke, supra*, at 167). "Factors relevant to the inquiry include: the frequency of the discriminatory conduct; the conduct's severity; whether the conduct was physically threatening or humiliating or merely an offensive utterance; and whether the conduct unreasonably interfered with the employee's work performance." *Kalich*, 679 F.3d at 473-74.

In seeking summary judgment as to this claim, Defendant states that Plaintiff has only alleged a few events that are even tangentially sexual in nature and that those events, even taken collectively, are not sufficiently severe to give rise to a hostile work environment claim.

Because Plaintiff's brief did not sufficiently respond to this challenge, the Court gave Plaintiff's Counsel an opportunity at the January 23, 2014 hearing to identify all of the alleged events that form the basis of this claim. Plaintiff's Counsel identified the following alleged events as the incidents of a sexual nature that support this claim:

14

1)   <u>Interactions with DeBono in 2009</u>: Plaintiff states that in early 2009 DeBono complimented Plaintiff by telling her that she looked great, flirted with Plaintiff, and asked Plaintiff to go out on a date with him.  (1/23/14 Hrg. Tr.; Pl.'s Decl.)  Plaintiff declined to date him initially, but in March or April of 2009 she went out on a total of three dates with Mr. DeBono.  (*Id.*).  Plaintiff's Declaration states that during one of her dates with DeBono, he said, "I don't get mad, I get even."  During her deposition, Plaintiff testified as to the context in which DeBono allegedly said that: "one time John DeBono made a remark to me that he had gotten into a fight with a health and safety rep.  And he goes, he's my buddy.  And I said, well, how do you fight with your buddy?  He goes, I don't get mad, I get even. (Pl.'s Dep. at 193).  After Plaintiff stopped dating DeBono, he stayed away from her work area.  (Pl.'s Decl.).

2)   <u>Statements / Conduct of Union Agent Swidan in 2010</u>:  Plaintiff states that in January of 2010 a union agent named Ray Swidan complimented Plaintiff by saying she was a beautiful woman.  Outside of work, Plaintiff attended a party at Swidan's home.  Plaintiff asserts that Swidan appeared to be angry when Plaintiff left the party early.  (1/23/14 Hrg. Tr.; Pl.'s Decl.).  Plaintiff also states that, in September of 2010, Swidan attempted to be intimate with Plaintiff by leaning in to her to have a kiss from her.  (*Id.*).

3)   <u>Willis's Comment in August of 2010</u>:  In August of 2010, Plaintiff sustained workplace injury to her forehead.  From the hospital, Plaintiff sent a photo of her injured forehead to her manager, Willis.  Willis allegedly made a statement to someone at the plant that he "should have hit that" before Plaintiff messed up her pretty face.  (1/23/14 Hrg. Tr.).

4)   <u>Lampi's Harassment In January of 2012</u>:  In January of 2012, Plaintiff began reporting a new supervisor, Lampi.  Plaintiff's Declaration states that Lampi sexually harassed her "by making both subtle and overt advances and suggestive remarks."  (Pl.'s Decl. at ¶ 41).  The only example or detail regarding that conduct that Plaintiff provides is that Lampi once said that he was "known to drunk text."  (*Id.*). Plaintiff's Declaration states that Plaintiff "understood this reference as meaning that Lampi was preparing me to receive from him sexually suggestive or romantic text messages while he was drunk."  (*Id.*).

As Defendant notes, Swidan is a union representative, not a Ford employee or agent.  (*See*

15

Pl.'s Br. at 3, stating that Swidan is a bargaining representative for local 600). Plaintiff has not presented any persuasive authority for the proposition that Defendant can be held liable for Swidan's conduct, especially where the alleged conduct occurs after work hours and outside of the workplace.

That leaves only the alleged conduct in paragraphs 1, 3, and 4 above. After carefully considering those alleged incidents, based upon the totality of the circumstances, including the frequency of the incidents and their severity, the Court finds that they are not sufficiently severe or pervasive enough to support a hostile work environment claim under Michigan law.

Accordingly, Defendant is entitled to summary judgment as to Plaintiff's hostile work environment claim based on sexual harassment under the ELCRA. Thus, that portion of Count I shall be dismissed with prejudice.

### 2. Retaliation Claim

Michigan's ELCRA provides that "a person shall not . . . [r]etaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceedings, or hearing under this act." *MacDonald v. United Parcel Svs.*, 430 F. App'x. 453, 464 (6th Cir. 2011) (quoting Mich. Comp. Laws § 37.2701(a)).

Plaintiff asserts that Count I of her Complaint includes a retaliation claim under the ELCRA.[2]

---

[2]Defendant also contends that Plaintiff has not sufficiently pleaded a retaliation claim in her Complaint. (*See* Def.'s 2/14/14 Br. at 1 n.1). Because Defendant filed a Motion for Summary Judgment, and because the Court concludes that Defendant is entitled to summary judgment as to this claim, the Court will not address this challenge to the sufficiency of Plaintiff's allegations.

16

Where no direct evidence is offered to support the claim, retaliation claims under the ELCRA are evaluated under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Worthy v. Michigan Bell Tel. Co.*, 472 F. App'x. 342, 345 (6th Cir. 2012). Under that framework, Plaintiff must first make out a prima facie case of retaliation. If she does so, then Defendant must offer some legitimate, nondiscriminatory explanation for its challenged employment action. If it does so, the burden of production shifts back to Plaintiff to show that Defendant's proffered reason for the challenged action is a pretext for illegal retaliation.

Defendant contends that Plaintiff cannot establish a prima facie case of retaliation and, even if she could, she cannot establish pretext.

### a. Prima Facie Case

To establish a prima facie case of retaliation in violation of the ELCRA, a plaintiff must show: 1) that she engaged in protected activity; 2) that this was known by the defendant; 3) that the defendant took an employment action adverse to the plaintiff; and 4) that there was a causal connection between the protected activity and the adverse employment action. *Garg v. Macomb Comm. Health Svs.*, 472 Mich. 263, 273 (2005). "The ELCRA, § 37.2701(a), specifically requires the plaintiff to demonstrate that '(1) [s]he opposed violations of the Act or participated in an activity protected by the Act and (2) his opposition or participation was a 'significant factor' in the adverse employment action." *Dotson v. Norfolk Southern R.R. Co.*, 52 F. App'x. 655, 660 (6th Cir. 2002).

### 1. Protected Activity

To establish a prima facie case of retaliation, a plaintiff must have engaged in protected

activity under the ELCRA.  "Protected activity includes charging a violation of the act, and although the charge need not cite the statute at issue, it 'must clearly convey to an objective employer that the employee is raising the specter of a claim of unlawful discrimination' under the statute."  *MacDonald,* 430 F. App'x. at 463

Here, Plaintiff contends that the following constitutes her protected activity under the ELCRA:  1) in August of 2010, Plaintiff complained to Defendant about an inappropriate comment allegedly made by Willis, after Plaintiff injured her face; 2) Plaintiff "complaining about sexual harassment on the company telephone hotline" on October 14, 2010, April, 2012, and May, 2012; and 3) Plaintiff complained to Labor Relations after Swidan tried to kiss her in September of 2010.  (Pl.'s 3/3/14 Br. at 1).[3]  Accordingly, Plaintiff has established that she engaged in protected conduct under the ELCRA.

### 2.    Adverse Employment Action

An adverse employment action, for purposes of a claim under the ELCRA, must: 1) be materially adverse in that it is more than mere inconvenience or an alteration of job responsibilities; and 2) have an objective basis for demonstrating that the change is adverse, rather than mere subjective impressions of the plaintiff.  *Meyer v. City of Centerline*, 242 Mich. App. 560, 569 (2000); *Fischer v. United Parcel Serv., Inc.*, 90 F. App'x. 802, 806 (6th Cir. 2004).

In her brief, Plaintiff alleges that she "suffered adverse acts in her employment," but the

---

[3]Plaintiff also asserts, as protected activity, that Plaintiff "cut off a dating/romantic relationship with Plant Manager John DeBono."  *Id*.  As Defendant notes, however, Plaintiff cutting off or terminating a personal relationship with a co-worker or supervisor, by itself, is not protected activity.

only adverse actions that she specifically identifies are the following three alleged actions.

First, Plaintiff asserts in her brief that after she stopped dating DeBono, "there began a pattern of Plaintiff being transferred from job to job where the assignments were in violation of Plaintiff's medical restrictions" (Pl.'s 3/3/14 Br. at 2).  Contrary that assertion, however, Plaintiff testified in her deposition that her job assignments did not violate her claimed restrictions and Defendant moved her when she verbally asked for accommodations (*see* Pl.'s Dep. Tr. at 81-84).

In addition, being moved to different positions within the Dearborn Truck Plant – at the same wage rate and with the same benefits – does not constitute an adverse employment action for purposes of the ELCRA.  *Meyer*, 242 Mich. App. at 569; *Fisher*, 90 F. App'x. at 806.

Second, Plaintiff asserts that DeBono "ordered Plaintiff's co-workers to resist reconciling with Plaintiff after a dispute and threatened that any dissenters would be moved off the line." (Pl.'s 3/3/14 Br. at 2).  The only evidence Plaintiff submits regarding this alleged conduct is Plaintiff's deposition transcript wherein she testified that she had been fighting with several female co-workers on the line and that she had heard, second-hand, that DeBono told those she had been fighting with that they should not talk to or make up with Plaintiff because Plaintiff was getting moved off the door line:

> I tried to make up with these girls numerous times, and no one would let it go.
> And then I found out later, from Angie, that John DeBono told them, do not let
> anybody make up with her because she's getting moved from the door line.
>
> . . . .
> Angie told me that he was – no one was allowed to make up with me and talk to
> me because he was gonna get me moved off the door line . . .

(Pl.'s Dep. at 141 & 192-93).  Such allegations by Plaintiff in her testimony are hearsay. Moreover, even if there were admissible evidence to establish that DeBono told the co-workers

that Plaintiff had been fighting with not to talk to her because she was getting moved off their line, the Court fails to see how that could be construed as an actionable adverse employment action.

Third, Plaintiff identifies her suspension on August 6, 2012, as an adverse action.  (Pl.'s 3/3/14 Br. at 3).  Plaintiff's suspension is an actionable adverse action that can support a retaliation claim under the ELCRA.

### 3.        Causal Connection

"A causal connection is an essential element of a prima facie case of retaliation under the ELCRA."  *Handlon v. Rite Aid Svs., LLC,* 513 F. App'x. 523, 528-29 (6th Cir. 2013) (citing *Garg, supra*).

In interpreting the ELCRA, the Michigan Supreme Court "has stated unequivocally that 'in order to show causation in a retaliatory discrimination case, [p]laintiff must show something more than merely a coincidence in time between protected activity and adverse employment action.'" *Id.* (quoting *Garg, supra*, at 660).  Thus, "[o]n the causal connection requirement, there must be evidence sufficient to raise an inference that the protected activity was the likely motivation for the adverse action."  *Dotson v. Norfold Southern R.R. Co.,* 52 F. App'x. 655, 660 (6th Cir. 2002)

The only actionable adverse action identified by Plaintiff is her August 6, 2012 suspension for having made an allegedly false claim to Defendant.   In order to establish a prima facie case of retaliation based on that action, Plaintiff must establish a causal connection between her protected activity and her August 6, 2012 suspension.

Again, the protected activity by Plaintiff consists of: 1) Plaintiff's complaint and hot-line

telephone call to Defendant in 2010 about Willis's comment and DeBono's alleged conduct; 2) Plaintiff's April 2012 hot-line complaint about Weid asking Lampi are "You hitting that?" in reference to Plaintiff; 3) Plaintiff's May 2012 hot-line complaint about being harassed by Lampi in unspecified ways, and Weid asking Lampi are "You hitting that?" in reference to Plaintiff;

The Supreme Court has applied a "but-for" causation test to retaliation claims under Title VII. *University of Texas Sw. Med. Ctr. v. Nassar*, __ U.S. __, 133 S.Ct. 2517 (2013). The Sixth Circuit has applied that same "but-for" causation test to retaliation claims under the ELCRA. *See Trujillo v. Henniges Auto. Sealing Sys. N.A., Inc.*, __ F. App'x. __, 2014 WL 593782 (6th Cir. Feb. 18, 2014).

The causal connection element has an unusual application in this particular case, given the adverse action at issue here (being disciplined for making what the employer concluded was a false sexual harassment claim). Technically speaking, Plaintiff's August 6, 2012 suspension for making a false claim would not have occurred but for her hot-line complaints wherein she asserted that Weid had advised her that Lampi asked him "You hitting that?" in reference to Plaintiff. Neither party has addressed what is required, under these circumstances, for Plaintiff to establish that Defendant suspended Plaintiff *in retaliation for* her having filed a sexual harassment complaint.

But even if Plaintiff could establish the requisite causal connection, Defendant contends that she cannot establish that its legitimate, non-discriminatory reason for her suspension was a pretext for illegal retaliation. The Court agrees.

### b.     Pretext

Even if Plaintiff could establish a prima facie case of retaliation based on her suspension,

the Court concludes that she cannot establish that Defendant' legitimate, non-discriminatory

reason for suspending her is a pretext for unlawful retaliation.

Here, Defendant contends that it had a legitimate, non-discriminatory reason for

suspending Plaintiff – after conducting an investigation, and submitting the issue to a hearing

with the union where the discipline was upheld, Defendant had an honest belief that Plaintiff had

intentionally filed a false sexual harassment claim.  (Docket Entry No. 58 at 5).  Defendant

argues that:

> There was no evidence the investigator (Ms. Meier) or the decision making (Mr.
> Wilcox) did not have an 'honest belief' Plaintiff had filed a false sexual
> harassment complaint, which essentially immunizes the discipline decision from
> challenge.  *See, e.g., Michael v. Caterpillar Financial Services Corp.*, 496 F.3d
> 584, 598-99 (6th Cir. 2007) (employer has honest belief where it "reasonably
> relied on particularized facts that were before it"; the employer's decision process
> need not "be optimal" nor must it have "left no stone unturned").  *See also, Hazle
> v. Ford Motor Co.,* 464 Mich. 456, 474-75; 628 N.W.2d 515 (2001) (even
> reliance on inaccurate information is not evidence of pretext unless the decision
> maker knew at the time it was inaccurate).  Plaintiff's retaliation claim is ripe for
> dismissal.

(Def.'s 2/14/14 Br. at 5).

A plaintiff can refute the legitimate, nondiscriminatory reason that an employer offers to

justify an adverse employment action by showing that the proffered reason:  1) had no basis in

fact; 2) did not actually motivate the defendant's challenged conduct; or 3) was insufficient to

warrant the challenged conduct.  *Hall, supra*; *Wexler v. White Fine Furniture*, 317 F.3d 564, 576

(6th Cir. 2003); *Manzer*, 29 F.3d at 1084.  The first type of showing consists of evidence that the

proffered bases for the termination never happened (*i.e.*, that they are factually false).  With

respect to the second kind of showing, "the plaintiff argues that the sheer weight of the

circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." *Id*. The third showing consists of evidence that other employees, particularly those not in the protected class, were not fired even though they engaged in similar conduct. *Id.*

Where, as here, a case is at the summary judgment stage, a plaintiff seeking to prove illegal retaliation via indirect evidence must submit sufficient evidence from which a reasonable jury could conclude that the defendant's legitimate, nondiscriminatory reasons for its actions are a pretext for unlawful retaliation. *Vincent v. Brewer*, 514 F.3d 489, 494 (6th Cir. 2007).

In response to Defendant's challenge based upon her inability to establish pretext, Plaintiff has failed to address how she believes she can establish pretext. (*See* Pl.'s 3/3/14 Br.).

Moreover, even if Plaintiff could offer evidence to establish pretext in some manner, the Court concludes that Defendant is "still entitled to summary judgment based on the 'honest belief' doctrine." *Shazor v. Professional Transit Mgmt., Ltd.*, __ F.3d __, 2014 WL 627406 (6th Cir. 2014). As explained by the Sixth Circuit in *Shazor*:

> "If the employer had an honest belief in the proffered basis for the adverse employment action, and that belief arose from reasonable reliance on the particularized facts before the employer when it made the decision, the asserted reason will not be deemed pretextual even if it was erroneous." *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 586 (6th Cir. 2009). "The key inquiry in assessing whether an employer holds such an honest belief is whether the employer made a reasonably informed and considered decision before taking the complained-of-action." *Sybrandt v. Home Depot, U.S.A., Inc*., 560 F.3d 553, 559 (6th Cir. 2009).

*Shazor, supra,* at *11. Here, Defendant has presented evidence to establish that it had an honest belief, which arose from particularized facts gathered during its investigation, that Plaintiff filed a false sexual harassment claim and asked another employee to provide false information.

23

Defendant has established that it made a reasonably informed and considered decision before suspending Plaintiff.

Accordingly, Defendant is entitled to summary judgment as to Plaintiff's retaliation claim under the ELCRA.

### B.   "Violation of MCL 37.1201 et seq." (Count II)

In Count II, Plaintiff asserts a claim under Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA").  Plaintiff alleges that she was discriminated against "when the Defendants bounced her from job to job outside of her restrictions, denied her workers compensation, placed her on discipline and attempted to repeatedly fire her in retaliation for her seeking accommodations."  (Compl. at ¶ 179).   Thus, Plaintiff appears to assert both a discrimination claim and a failure-to-accommodate claim under the PWDCRA.

In its Motion for Summary Judgment, Defendant contends Count II fails as a matter of law for several reasons.  While the Court need not address all of them, the Court agrees that Defendant is entitled to summary Judgment as to this count.

### 1.   Plaintiff's Deposition Testimony Contradicts Her Allegations

Again, Plaintiff's Complaint alleges that she was discriminated against when: 1) "the Defendants bounced her from job to job outside of her restrictions," 2) "denied her workers compensation," and 3) "placed her on discipline and attempted to repeatedly fire her in retaliation for her seeking accommodations."  (Compl. at ¶ 179).

Defendant's motion notes that, contrary to those allegations, Plaintiff testified that: 1) her job assignments did not violate her claimed restrictions and Defendant moved her when she verbally asked for accommodations (*see* Pl.'s Dep. Tr. at 81-84); and 2) she was paid worker's

24

compensation benefits (Pl.'s Dep. Tr. at 63-64 & 248-249) (*see also* Ex. 7 to Def.'s Br. at ¶ 5).

**2.       No Evidence Of Statutorily-Protected Disability**

Michigan's PWDCRA prohibits discrimination against individuals because of their disability status. *Peden v. City of Detroit*, 470 Mich. 195, 203 (2004). "[T]he PWDCRA generally protects only against discrimination based on physical or mental disabilities that substantially limit a major life activity of the disabled individual, but that, with or without accommodation, do not prevent the disable individual from performing the duties of a particular job." *Id*. at 204. "Accordingly, the PWDCRA prohibits employment discrimination by mandating that 'employers' refrain from taking any number of adverse employment actions against an individual 'because of a disability . . .  that is unrelated [or not directly related] to the individual's ability to perform the duties or a particular job or position.'" *Williams v. University of Michigan*, 2010 WL 5129888 (Mich.App. 2010) (quoting *Peden, supra*, and Mich. Comp. Laws § 37.1202)).

To establish a prima facie case of discrimination under the PWDCRA, a plaintiff must establish: 1) that she is disabled as defined by the PWDCRA; 2) that the disability is unrelated to her ability to perform the duties of her particular job; and 3) that she was discriminated against in one of the ways described in the statute. *Peden,* 470 Mich. at 204.  Under the statute, a disability is defined as: 1) "[a] determinable physical or mental characteristic" that "substantially limits 1 or more major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular job or position," 2) a history of such, or 3)  being regarded as having such a disability. *Peden*, 470 Mich. at 204.  The Michigan Court of Appeals "has defined major life activities as "functions such as caring for oneself, performing manual tasks, walking,

seeing, hearing, speaking, breathing, learning and working." *Chiles v. Machine Shop, Inc.*, 238 Mich.App. 462, 477 (1999).

Defendant asserts that Plaintiff has not produced any evidence to establish that she has a statutorily-protected disability. (Def.'s Br. at 16). In so arguing, Defendant states:

> Plaintiff testified her right carpal tunnel syndrome was "somewhat" of a disability but she could not identify any major life activity that it substantially limited. Tr. 65-67, 85. *See Chiles v. Machine Shop, Inc.,* 238 Mich.App. 462, 477; 606 N.W.2d 398 (1999) (plaintiff may not rest on allegations that his impairment "constituted a statutory disability"). Plaintiff acknowledged that there were many jobs she could do, Tr. 77-82, 247-48, and as for those jobs she could not do, it was because her disability was not "unrelated to [her] ability to perform the duties of a particular job or position." M.C.L. 37.1202(1)(b) See also, *Peden*, 470 Mich. at 204.

(Def.'s Br. at 16).

In response, Plaintiff's brief asserts that "the condition of bilateral carpal tunnel syndrome has been recognized as a qualifying disability under the act. *See, Gibbs v. ADS Alliance Data Systems, Inc.,* 2011 WL 3205779 at 3 (D. Kan. July 28, 2011) (genuine issues of material fact exist as to whether carpal tunnel syndrome constitutes a disability within the meaning of the ADA)." (Pl.'s Br. at 17-18). That case involved a claim under the ADA – not a claim under Michigan's PWDCRA. Moreover, the Court concluded – based upon *evidence* in the record in that case – that a genuine issue of material fact existed as to whether the plaintiff's carpal tunnel syndrome constitutes a disability within the meaning of the ADA.

Here, however, in response to Defendant's properly-supported motion for summary judgment, Plaintiff has not directed the Court to any evidence to establish that she has a statutorily-protected disability. Nor has Plaintiff addressed the above-cited portions of her own deposition testimony in this case, such as her testimony that:

26

> Q.   According to your Complaint, you claim to be a person with a disability?
> A.   I claim to be a person with disability? Somewhat, yes.
> Q.   What is your disability?
> A.   My right hand.
> Q.   And what is the problem with your right hand?
> A.   I have no strength in it.
> Q.   Any other disabilities?
> A.   Well, I'm not really disabled, but I have a lot of pain in my body.  But as far as my right hand, from being moved from different jobs, my right hand – I don't have any dexterity or strength or grip in my right hand.
> Q.   Is there a medical terms for – for your disability?
> A.   Well, I still have carpal tunnel, even though I had the surgery.
> Q.   Okay.  Anything else? Any other medical?
> A.    Not that I know of.

(Pl.'s Dep. Tr. at 65-66).

Plaintiff has also failed to direct the Court to any evidence to establish that, even if she had carpal tunnel syndrome, that it impaired a major life activity.  Like the plaintiff in *Chiles*, Plaintiff has not alleged, let alone present[ed evidence to establish], that a major life activity was implicated."  *Chiles*, 238 Mich.App. at 477.

Plaintiff has also not addressed Defendant's assertion that "Plaintiff acknowledged that there were many jobs she could do, Tr. 77-82, 247-48, and as for those jobs she could not do, it was because her disability was not "unrelated to [her] ability to perform the duties of a particular job or position."  M.C.L. 37.1202(1)(b) See also, *Peden*, 470 Mich. at 204."

### 3.   No Written Request For Accommodation

In order to bring a cause of action under the PWDCRA "for failure to accommodate in employment, the employee must advise the employer in writing of the need for accommodation." *Petzold v. Borman's, Inc.*, 241 Mich.App. 707, 719 (2000); Mich. Comp. Laws § 37.1210(18) (providing in pertinent part, that "[a] person with a disability may allege a violation against a

27

person regarding a failure to accommodate under this article only if the person with a disability *notifies the person in writing of the need for an accommodation* within 182 days after the person with a disability knew or reasonably should known that an accommodation was needed.") (emphasis added).

Defendant asserts that Plaintiff cannot bring an accommodation claim under the PWDCRA because she never submitted a written request for an accommodation. (Def.'s Br. at 15).

In response, Plaintiff asserts that she "did request" some unspecified accommodation of her alleged disability (carpel tunnel syndrome) "by virtue of her doctor submitting written notification of restrictions to be applied to Plaintiff's work activities." (Pl.'s Br. at 18). The only evidence Plaintiff directs the Court to with respect to this issue is "Exh. 10, p.1." (*Id.*) Exhibit 10 to Plaintiff's Brief is not a letter from Plaintiff's physician or a written request for an accommodation by Plaintiff. Rather, Exhibit 10 to Plaintiff's Brief is an internal Ford e-mail regarding a telephone call that Plaintiff had made to a complaint hot-line. Although the Court has no duty to do so, it has also gone through Plaintiff's other exhibits and does not see any letters from a physician or any written requests for an accommodation by Plaintiff.

The Court shall grant summary judgment in favor of Defendant as to Count II of Plaintiff's Complaint.

C.     **"Intentional Infliction of Emotional Distress" (Count III)**

In seeking summary judgment as to this count, Defendant asserts that this claim fails for "at least two reasons." First, Defendant contends that Plaintiff cannot establish extreme and outrageous conduct by it because it took no action against Plaintiff that it was not entitled to take

28

under the CBAs governing her employment.  Second, Defendant contends that Plaintiff's claim

runs afoul of workers' compensation exclusivity." (Def.'s Br. at 17).

In responding to the motion, Plaintiff states that she "opposes Defendant's motion for

summary judgment in its entirety."  (Pl.'s Br. at ii).  But Plaintiff's brief does not address the

legal challenges to her intentional infliction of emotional distress claim.

The Court shall dismiss this claim because, in response to Defendant's properly

supported motion for summary judgment, Plaintiff has not identified any action that Defendant

took with respect to Plaintiff that it was not permitted to take under the CBA, that could

constitute extreme and outrageous conduct that is required for a claim of intentional infliction of

emotional distress.

### D.     "Civil Conspiracy" (Count IV).

Among its stated grounds for seeking summary judgment as to Count IV, Defendant notes

that "there is no civil action for conspiracy alone; there must be an underlying actionable tort."

*Yoost v. Caspari*, 295 Mich.App. 209, 224 n.2 (2012).  In other words, "[a]n actionable civil

conspiracy claim fails as a matter of law unless the plaintiff establishes a separate, actionable

tort."  *Future Now Enter., Inc. v. Foster*, 860 F.Supp.2d 420, 429 (E.D. Mich. 2012) (citing

*Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 257 Mich.App. 365, 384

(2003).

The only actionable tort[4] set forth in Plaintiff's complaint is her intentional infliction of

---

[4]In its Motion for Summary Judgment, Defendant states that neither her PWDCRA or
ELCRA claims can serve as the underlying "tort" to support a common law civil conspiracy
claim because both statutes contain their own conspiracy provisions (Mich. Comp. Laws §
37.1602(b) and (c) (PWDCRA) and Mich. Comp. Laws § 37.2701 (b) and (c) (ELCRA), which
must serve as her exclusive remedy.  *See McClements v. Ford Motor Co.*, 473 Mich. 373, 382

emotional distress claim stated in Count III.  That claim, however, shall be dismissed for the

reasons set forth above.  As such, Plaintiff's conspiracy claim fails as a matter of law.

**CONCLUSION & ORDER**

For the reasons set forth above, IT IS ORDERED that Defendant Ford's Motion for

Summary Judgment is GRANTED and this action shall be DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.


S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  March 7, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on
March 7, 2014, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager

---

(2005).  Plaintiff did not respond to this argument or offer an authority to establish that she can
base a common law civil conspiracy claim upon either a ELCRA or PWDCRA claim.